UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Kennedy Amenya Gisege,

        Plaintiff,

   vs.                        REPORT AND RECOMMENDATION

Minnesota Department of
Corrections, Joan Fabian,
Nannette Schroeder, Dr.
Dayton D. Burkholder,
and Jane/John Doe,

              Defendants.       Civ. No. 06-1353 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendants Minnesota Department of Corrections ("MDOC"), Joan Fabian ("Fabian"), and Nannette Schroeder ("Schroeder")(collectively, the "State Defendants") for Summary Judgment, the Motion of the Defendant Dr. Dayton D. Burkholder ("Burkholder") to Dismiss, or for Judgment on the Pleadings, and the Plaintiff's Motion for Summary Judgment.  For these purposes, the Plaintiff appears pro se, the State Defendants appear by Kelly S.

Kemp, Assistant Minnesota Attorney General, and Burkholder appears by Jeremy J. Sundheim, Esq. For reasons which follow, we recommend that the State Defendants' Motion for Summary Judgment be granted, Burkholder's Motion to Dismiss, or for Judgment on the Pleadings, be granted, and the Plaintiff's Motion for Summary Judgment be denied.

## II.  Factual and Procedural Background

The Plaintiff, who is a Minnesota State prisoner, commenced this action under Title 42 U.S.C. §1983, alleging that the Defendants violated his Federal constitutional rights while he was being detained at the Minnesota Correctional Facility, in Stillwater ("MCF-STW"). Specifically, the Plaintiff alleges that his Federal Constitutional rights, under the First and Eighth Amendments, were violated by the Defendants, and additionally, he alleges claims of breach of contract, contempt of Court, and a violation of Minnesota Statutes Section 595.02. See, Amended Complaint, Docket No. 9. As a result of those alleged violations, the Plaintiff is seeking actual, and statutory damages, as well as a Writ of Mandamus to compel the Defendants to provide him with medical care. Id.

All of the parties, who are named in the Plaintiff's Amended Complaint, were associated with his incarceration at MCF-STW. The MDOC is the State Agency

charged with administering MCF-STW, Fabian is the Commissioner of the MDOC, Schroeder is the Director of Health Services for the MDOC, and Burkholder was a physician, who was employed at MCF-STW, and who treated the Plaintiff.  In his Amended Complaint, the Plaintiff claims that the Doe Defendant was an MDOC employee -- identified as "M. Connor" -- who responded to a kite form that had been submitted by the Plaintiff.  See, <u>Amended Complaint</u>, supra at ¶21.

In his Complaint, the Plaintiff alleges that he was denied medical treatment by the Defendants for a serious medical condition, which he describes as a "fracture of shaft of [the] penis."  <u>Id.</u> at ¶17.  The Plaintiff claims that he was the victim of a sexual assault, on April 11, 2004, while he was in the shower area of the MCF-STW facility.  <u>Id.</u> at ¶10.  According to the Plaintiff, that attack left him "injured and maimed," and resulted in permanent deformity and disability, accompanied by severe pain.  <u>Id.</u> at ¶¶11-12.  The Plaintiff alleges that he sought medical attention after the attack and, on May 19, 2004, was examined by Burkholder, who was unable to observe the Plaintiff's symptoms as he failed to instruct him to induce an erection, and declined the Plaintiff's request that he be referred to a urologist.  <u>Id.</u> at ¶14; <u>Affidavit of Dr. David Paulson</u>, <u>Docket No. 42</u>, Exhibit 1, p. 11.  The Plaintiff was reexamined by Burkholder on September 8, 2004, and again, on September 14, 2004, and after

those examinations, Burkholder discussed the Plaintiff's symptoms with a consulting urologist.  Id. at ¶16; Affidavit of Paulson, supra at pp. 11-12.

Burkholder was asked by MCF-STW officials to review the Plaintiff's previous medical records for evidence that his alleged injury was the result of a pre-existing condition, and subsequently, the doctor withdrew his request that the Plaintiff be examined by a urologist, based on Burkholder's belief that the Plaintiff's condition had existed prior to the alleged attack.  Id. at ¶¶18-19.  On September 26, 2004, the Plaintiff renewed his request, in an offender kite form, for treatment by a urologist and, in response, a MCF-STW official informed him that he was not eligible for treatment because he suffered from a pre-existing condition.  Id. at ¶21.  The kite response also accused the Plaintiff of lying about the attack in order to obtain treatment under false pretenses and, on October 7, 2007, the Plaintiff was charged with violating MDOC Offender Discipline Regulations.  Id. at ¶¶21-22.  A Hearing was held by the MDOC, on October 12, 2004, at which Burkholder testified against the Plaintiff, and as a result of the Hearing, the Plaintiff was sentenced to forty-five (45) days of segregation, that was suspended for 150 days.  Id. at ¶¶23-25.

On December 17, 2004, counsel for the Plaintiff submitted a written request to the Medical Director of the MDOC, and to Schroeder, requesting a private

consultative exam with a urologist, and the Plaintiff was examined by Dr. David Paulson, who was the Medical Director of MDOC, on January 19, 2005. Id. at ¶¶26-27; Affidavit of Paulson, supra at ¶4. Dr. Paulson was unable to determine if the Plaintiff's condition was organic, or arose as a result of attack, id. at ¶27, and concluded that Peyronie's disease[1] was the most likely diagnosis, and that surgery was not medically necessary. See, Affidavit of Paulson, supra at ¶¶5, 9. Dr. Paulson recommended that an x-ray of the Plaintiff's penis be taken for diagnostic purposes, see, Affidavit of Paulson, supra at Exhibit 1, p. 29, and, on review of those x-rays, the doctor found that they revealed penile calcification that might, or might not, be related to Peyronie's disease. Id. at p. 31.

In June of 2005, counsel for the Plaintiff arranged for an examination of the Plaintiff by a private physician, Dr. Paul Gleich, who is a urologist. Id. at p. 32-34. The Plaintiff's medical records were forwarded to Dr. Gleich, who examined the Plaintiff, and concurred with Dr. Paulson's assessment, that it was impossible to determine if the deformation of the Plaintiff's penis resulted from an assault, or was related to Peyronie's disease. Id. at pp. 38-39. Dr. Gleich recommended prescribing

---

[1]Peyronie's disease is "fibrosis of the cavernous sheaths leading to contracture of the investing fascia of the corpora, resulting in a deviated and sometimes painful erection." The Merck Manual, at p. 2039 (18th Ed. 2006).

Potaba[2] to treat the Plaintiff's symptoms.  Id. at p. 39.  The Plaintiff was re-examined by Dr. Gleich on November 22, 2005, who found that the Plaintiff had a "Peyronie like plaque in the midshaft of the penis" that had not improved on Potaba, and he discussed treatment options with the Plaintiff, which included surgery.  Id. at p. 42-43.

In Count One of his Amended Complaint, the Plaintiff alleges that the Defendants violated his rights under the Eight Amendment, by deliberately disregarding his legitimate medical needs.  In Counts Two and Three, the Plaintiff argues that the Defendants violated the terms of a Consent Decree, which was issued in Hines v. Anderson, 439 F. Supp. 12 (D. Minn. 1977), and are, as a result, liable for a breach of contract, and are in contempt of Court.  Count Four asks the Court to issue a Writ of Mandamus against all of the Defendants.  Count Five alleges that Burkholder, MDOC, and the Doe Defendant, retaliated against his exercise of free speech by denying him medical treatment, in violation of the First Amendment, and Count Six similarly claims that Burkholder violated his First Amendment rights by retaliating against him at the Administrative Hearing.  In Count Seven, the Plaintiff alleges that Burkholder violated the Plaintiff's rights, under Minnesota Statute Section

---

[2]Potaba is indicated for "treatment of serious and often chronic entities, such as  * * * Peyronie's Disease."  Physician's Desk Reference, pp. 1634 (60th ed. 2006).

595.02, by breaching the physician-patient privilege.  The Plaintiff has moved for Summary Judgment on all Counts.

The State Defendants have also moved for Summary Judgment, and argue that the Plaintiff's claims should be dismissed because he has not exhausted his administrative remedies.  In the alternative, the State Defendants argue that the claims against Fabian, and Schroeder, are barred by official and qualified immunity, and that the Plaintiff has not shown that they acted with deliberate indifference.  Finally, the State Defendants allege that the Plaintiff has failed to state a claim for breach of contract, and contempt of Court, as a matter of law, and that he is not eligible for a Writ of Mandamus.

Burkholder has filed a separate Motion to Dismiss, or for Judgment on the Pleadings, and argues that the Court lacks personal jurisdiction as he was never properly served in this action.  In the alternative, Burkholder claims that the Plaintiff has failed to show that he violated the Plaintiff's rights under the Eighth Amendment, and that the Plaintiff's other claims fail as a matter of law.

Discussion

A.    The State Defendants' Motion for Summary Judgment.

1.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006), citing Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003); Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving

party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." <u>Rule 56(e), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center, Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the

- 9 -

nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

2.    Legal Analysis. The State Defendants seek Summary Judgment on the Plaintiff's 1983 claims owing to his asserted failure to exhaust his administrative remedies, as to those claims, and they seek Summary Judgment of the remaining State law Counts of his Amended Complaint, based upon the doctrines of official and qualified immunity, and upon the Plaintiff's asserted failure to state a claim as a matter of law.  We commence our discussion with the State Defendants' contention that the Plaintiff has failed to exhaust his administrative remedies.

a.    Failure to Exhaust Administrative Remedies
for the Section 1983 Claims.

In Jones v. Bock, --- U.S. ---, 126 S. Ct. 910 (2007), the Supreme Court recently considered the role that a prisoner's failure to exhaust his administrative remedies should play in the context of deciding the merits of a claim brought under Section 1983.  The Court began its analysis by noting that requiring prisoners to exhaust their administrative remedies had the positive effect of allowing prison officials "an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court," which, in turn, "has the potential to

reduce the number of inmate suits, and also to improve the quality of suits that are

filed by producing a useful administrative record."  Id. at 914-15, citing Woodford v.

Ngo, 548 U.S. ---, 126 S. Ct. 2378, 2388 n. 4 (2006).  Those purposes served as the

backdrop to the Court's consideration of the exhaustion requirement, that Congress

included in the Prison Litigation Reform Act ("PLRA"), which provides as follows:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by
> a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

Title 42 U.S.C. §1997e(a).

The Court first considered whether exhaustion, which is "mandatory under the

PLRA," is a pleading requirement that must be satisfied by the prisoner in his

Complaint, or if it must be pled, and proved, by the defendant.  See, Jones v. Bock,

supra at 918-19, citing Porter v. Nussle, 534 U.S. 516, 524 (2002).  After noting that

the drafters of the PLRA failed to impose a stringent pleading requirement on

prisoners, the Court concluded that "failure to exhaust is an affirmative defense under

the PLRA, and that inmates are not required to specifically plead or demonstrate

exhaustion in their complaints."  Id. at 921.  The Court further clarified that Courts

charged with determining exhaustion should do so on case-by-case basis, with each

prisoner's Complaint evaluated in light of its compliance with established prison grievance procedures.  Id. at 922-23.

The Court concluded by considering "mixed claims," in which a prisoner has failed to exhaust some, but not all, of the claims asserted in his Complaint.  In general, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad," and the Court distinguished the exception to this general rule -- the total exhaustion requirement in habeas corpus -- because of the implication that habeas relief has on principles of comity and federalism.  Id. at 924.  The Court concluded that the language in Section 1997e(a) of PLRA, which provides that "[n]o action shall be brought" unless administrative procedures are exhausted, allowed Courts to follow the typical claim-by-claim approach, and precluded blanket dismissal of a prisoner Complaint that contained both exhausted and unexhausted claims.  Id.

The State Defendants have provided copies of the Grievance Procedure, that was in effect at MCF-STW during the period when the events, which are contested in the Plaintiff's Complaint, allegedly took place.[3]  See, Affidavit of Kelly S. Kemp,

---

[3]Specifically, the State Defendants have submitted copies of the Grievance Procedure of the MDOC, which was in effect on May 1, 2003; April 1, 2004; November 1, 2004; and April 1, 2005; and they are substantively identical for the purposes of our analysis.  See, Affidavit of Kelly S. Kemp, Docket No. 43, at Exhibits 6-9.

Docket No. 43, at Exhibits 6-9. At all relevant times, the sequential grievance system, which was operative at MCF-STW, provided that, if a prisoner was unsatisfied with MCF-STW, after filing an informal kite complaint, he could bring an official complaint by submitting an Offender Grievance Form with the Warden. Id. at Exhibit 6, at unnumbered p. 2. If the prisoner did not receive a response, he could submit an appeal to the Commissioner, within twenty (20) working days of the date that the grievance was logged, and, if he received a response but was not satisfied with that response, he could appeal, within fifteen (15) days of the date that the decision was signed. Id. at unnumbered pp. 3-4.

The decision of the Commissioner is final and, "[o]nce the assistant or deputy commissioner or the Commissioner has resolved a grievance appeal, there will be no further appeals." Id. at unnumbered p. 4. In the alternative, should the prisoner fear that his safety would be threatened, if it were known that he had filed a grievance at his facility, he had the option of immediately grieving to the Central Office Grievance Appeal Coordinator, whose decision is final. Id. at unnumbered p. 3. Therefore, in order to have exhausted the administrative grievance procedure, an inmate must have followed the sequential process through to a final determination, by the Commissioner or the Central Office.

"Courts recognize only three exceptions to the exhaustion requirement, including futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or practice of general applicability that is contrary to law." Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 656 (8th Cir. 1999), citing Urban by Urban v. Jefferson Co. Sch. Dist. R-1, 89 F.3d 720, 724 (10th Cir. 1996). "An administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief." Ace Prop. & Cas. Insur. Co. v. Federal Crop Ins., 440 F.3d 992, 1000 (8th Cir. 2006), citing McCarthy v. Madigan, 503 U.S. 140, 147 (1992).

We recognize that, in some instances, if prison officials prevent an inmate from exhausting his administrative remedies, then the Court may determine that the prisoner has satisfied the PLRA exhaustion requirement. See, Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001)("Thus, Foulk's testimony suggests that he had exhausted his available administrative remedies because, once MDOC failed to respond to his IRR, no further administrative proceedings were "available" to him."); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)("We believe that a remedy that prison officials prevent a prisoner from "utiliz[ing]" is not an "available" remedy under §1997e(a)[.]").

- 14 -

However, a plaintiff must present some evidence, other than mere conclusory statements, to demonstrate that he was precluded from fully exhausting his administrative remedies. See, <u>Gibson v. Weber,</u> 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances," and "the district court did not err by granting summary judgment in favor of the defendants."); <u>Sergent v. Norris</u>, 330 F.3d 1084, 1086 (8th Cir. 2003) ("Significantly, however, we find no evidence in the record before us that [the plaintiff] asserted below, to the district court, that he was being prevented from effectively utilizing grievance procedures"); <u>McAlphin v. Morgan,</u> supra at 862 ("Because McAlphin did not present this evidence to the district court, McAlphin did not satisfy his burden of showing that he exhausted available administrative remedies and the district court properly dismissed his complaint without prejudice"); see also, <u>Boyles v. Park</u>. 111 Fed.Appx. 861 (8th Cir. 2004)("Further, while there was some evidence in the record below about problems with the grievance process, the evidence was not specific enough to show that prison officials had prevented Boyles from administratively exhausting the issues he raised in the instant lawsuit."), citing <u>Sergent v. Norris</u>, supra at 1085-86.  However, as our Court of Appeals has previously held,

a plaintiff's subjective belief, that administrative procedures were not available to him, is not determinative of the exhaustion requirement.  See, <u>Gibson v. Weber</u>, supra at 341, citing <u>Lyon v. Vande Krol</u>, 305 F.3d 806, 809 (8th Cir. 2002).

The State Defendants have submitted an Affidavit attesting that the Plaintiff has not filed grievances on any of his claims, see, <u>Affidavit of Kobie K. Hudson</u>, <u>Docket No. 41</u>, at ¶3, and they argue that, as a result, his claims, that he brings under Section 1983, should be dismissed.  The Plaintiff concedes that he has not exhausted the formal grievance process, but he asserts that, following his alleged sexual assault on April 11, 2004, he filed "written requests" with the MCF-STW officials, orally requested medical care, and served a written request for medical care through his counsel.  See, <u>Amended Complaint</u>, supra at ¶34; <u>Plaintiff's Brief in Opposition</u>, <u>Docket No. 62</u>, at p. 7.  The Plaintiff maintains that any additional efforts to exhaust his remedies would have been futile for, "when defendants charged plaintiff with violating [MCF-STW Regulations], he was ordered not to try and get treatment or any other relief based on the April 11, 2004 assault."  <u>Plaintiff's Reply Memorandum</u>, supra at p. 10.  Our review of the Administrative Record reveals no such order.

Instead, the Hearing Findings, from the Plaintiff's disciplinary proceedings on October 12, 2004, state that the Plaintiff "was informed he needs to either consult an

outside expert for an evaluation or to drop the issue" of his alleged injury to his penis. See, <u>Affidavit of Kemp</u>, supra at Exhibit 4.   Moreover, in response to those Findings, the Plaintiff apparently did submit an appeal to the Warden, in which he challenged the decision of the Hearing Officer, <u>id.</u> at Exhibit 5, which suggests that he did not believe that he was barred from filing additional grievances.   The grievance was denied on November 4, 2004, and thereafter, the Plaintiff failed to appeal that decision to the Commissioner.

The  Plaintiff has not competently controverted the State Defendants' attestation that he failed to exhaust his administrative remedies, see, <u>Affidavit of Hudson</u>, supra at ¶3, and he has failed to demonstrate that efforts to exhaust his remedies would have been futile.  As a consequence, we find that the Plaintiff has failed to exhaust his claims, which are brought under Section 1983, and we recommend that Counts One, Five, and Six, be dismissed without prejudice.[4]

---

[4]We note that Count Six is alleged only against Burkholder, who did not affirmatively cite the Plaintiff's failure to exhaust his remedies in his Memorandum in Support.  See, <u>Docket No. 48</u>.  However, as we have already observed, Burkholder is named solely in his official capacity and, in their Memorandum in Support, see, <u>Docket No. 40</u>, the State Defendants affirmatively argue that the Plaintiff has failed to exhaust any of his claims under Section 1983, which would include those alleged against any MCF-STW employee in his official capacity.  Thus, we find that the Defendants, including Burkholder, have satisfied their pleading requirement, and dismissal, without prejudice, for failure to exhaust administrative remedies is

b.   <u>The Plaintiff's Claims Arising from the Hines Consent Decree</u>.

In Count Two of his Amended Complaint, the Plaintiff argues that the Defendants are liable for a breach of contract, in that they violated a Consent Decree that was issued in <u>Hines v. Anderson</u> ("<u>Hines I</u>"), 439 F. Supp. 12 (D. Minn. 1977), which, he claims, requires the Defendants to abide by the Minnesota Patients' Bill of Rights ("MPBR").  See, <u>Minnesota Statutes Section 144.651</u>.  In Count Three, the Plaintiff brings a claim of contempt of Court against the Defendants for allegedly violating the <u>Hines</u> Decree and, in Count Four, he seeks a Writ of Mandamus to enforce the Defendants' compliance with that Decree.  The State Defendants argue that the <u>Hines</u> Decree does not apply to the Plaintiff, and that, therefore, those Counts fail as a matter of law.

The <u>Hines</u> Decree was issued, by the District Court, in 1977, as a result of a class action lawsuit concerning available medical treatment, in the State prison system, that was filed by four (4) State prisoners.  See, <u>Hines I</u>, supra at 15; <u>Hines v. Anderson</u> ("<u>Hines II</u>"), 83 Fed.Appx. 148, 148-49 (8th Cir. 2003).  The terms of the

---

appropriate on Count Six.

- 18 -

Decree required that the provisions of the MPBR be followed "[t]o the fullest extent possible in the prison environment," and specified as follows:

> No inmate shall be deprived of necessary and adequate medical care, including examination, diagnosis and treatment by reason of his status as an inmate, by reason of his indigency, or because he is close in time to release, discharge or parole.  Such necessary and adequate care need not include purely elective surgery or treatments or surgery purely cosmetic in nature.

Hines I, supra at 16-17.

The Decree specified that "this court order shall apply to the primary maximum security prison for men in Minnesota" which, at that time, was the Minnesota State Prison that is located in Bayport, Minnesota.  Id. at 23.

Hines I was subsequently reopened and, on March 29, 1999, the District Court, the Honorable Michael J. Davis presiding, issued an Order in which he reiterated the jurisdictional limitation of the Hines Decree, and clarified that the primary maximum security prison for men, in Minnesota, had shifted from the Minnesota State Prison in Bayfield, to MCF-Oak Park and, on that basis, denied Motions for contempt of Court that had been brought, under the Hines Decree, by inmates housed at MCF-STW.  See, Hines I, Civ. No. 73-387 (PJS/AJB), Docket No. 217.  On April 4, 1999, Magistrate Judge Arthur J. Boylan recommended that the claims of those plaintiffs, who were not housed in MCF-Oak Park, should be dismissed for lack of standing to

bring a claim under the <u>Hines</u> Decree, <u>id.</u> at Docket No. 221, and that recommendation was adopted by the District Court on September 9, 1999. Since that Order, the <u>Hines</u> Decree has only been applied to Complaints, which were filed by inmates at MCF-Oak Park. See, <u>Hines II</u>, supra at 149.[5]

The Plaintiff has presented no argument that would responsibly contest the determination of the District Court, that the <u>Hines</u> Decree is applicable only to inmates housed at MCF-Oak Park. Based on the prior decision of a District Court in this District, the Plaintiff, as an inmate at MCF-STW, lacks standing to enforce the <u>Hines</u> Decree, and his claims, that the Defendants are liable for breach of contract, and for a contempt of Court, should be denied.

Of course, the Plaintiff also seeks a Writ of Mandamus as to all of the Defendants, which would require them to adhere to the requirements of the <u>Hines</u> Decree. However, "[t]he issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations," <u>In re MidAmerican Energy Co.</u>, 286 F.3d 483, 486 (8th Cir. 2002), and the decision to issue such a Writ is largely discretionary. See, <u>Kerr v. United States District Court</u>, 426 U.S. 394, 403 (1796). Although Rule 81(b),

---

[5]The <u>Hines</u> Decree was terminated by the District Court, the Honorable Patrick J. Schiltz presiding, on March 30, 2007. See, <u>Hines v. Anderson</u>, Civ. No. 73-387 (PJS/AJB), Docket No. 807.

Federal Rules of Civil Procedure, has abolished the Writ of Mandamus, Title 28 U.S.C. §1361 specifically provides a District Court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Title 28 U.S.C. §1361. However, District Courts do not have jurisdiction to issue such Writs to govern the action of State employees. See, Turner v. Caspari, 38 F.3d 388, 392 n.6 (8th Cir. 1994); Griffin-El v. Delo, 34 F.3d 602, 605 n.4 (8th Cir. 1994); Hein v. Arkansas State Univ., 972 F. Supp. 1175, 1181 (E.D. Ark. 1997); Harris v. Dept. of Corrections, 426 F. Supp. 350, 351-52 (D.C. Okl. 1977). Since none of the Defendants are Federal agents, we lack jurisdiction to issue a Writ of Mandamus in this case, even if we concluded, which we do not, that the Hines Consent Decree had any proper application here.

In the alternative, Courts considering requests for a Writ of Mandamus have interpreted them liberally as requests for an Injunction, see, Hein v. Arkansas State Univ., supra at 1181 (citing cases), and, in his Memorandum of Law, Docket No. 52, at p. 4, the Plaintiff suggests that he seeks to compel the Defendants to allow him to receive treatment, by a physician not affiliated with the Defendants, with the costs to be paid by the MDOC.

- 21 -

We note that, in determining whether to grant a preliminary injunction, a Court considers: "1) the probability of the movant's success on the merits; 2) the threat of irreparable harm to the movant; 3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and 4) whether the issuance of the preliminary injunction is in the public interest."  Emerson Electric Co. v. Rogers, 418 F.3d 841, 844 (8th Cir. 2005), citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981).  "A preliminary injunction is an extraordinary remedy, see Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987), and the burden of establishing the propriety of an injunction is on the movant."  Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003), citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995).

"Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction."  Id., citing Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 299 (8th Cir. 1996).  "When there is an adequate remedy at law, a preliminary injunction is not appropriate."  Id., citing Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 738 (8th Cir. 1989).  In addition, "an injunction cannot issue if there is no chance of success on the merits * * *."  Mid-America Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005), citing

Firefighters Local Union No. 1784 v. Stotts, 457 U.S. 561, 589 (1984)(O'Connor, J.,

concurring), and AM General Corp. v. DaimlerChryler Corp., 311 F.3d 796, 804 (7th

Cir. 2002).

Here, the relief, that is sought by the Plaintiff, is medical treatment, by a

urologist not affiliated with the MDOC, to ascertain whether his condition is one for

which treatment is appropriate.  See, Amended Complaint, supra at ¶26, 32.  However,

the Record reflects that the Plaintiff has, in fact, been examined by a private urologist.

As related by the Plaintiff, and as supported by evidence of Record, on December 17,

2004, the Plaintiff's counsel filed a written request that the Plaintiff be seen by a

urologist.  See, Plaintiff's Brief in Opposition, Docket No. 62, at p. 5.  On January 19,

2005, the Plaintiff was examined by Dr. Paulson, who was the Medical Director of the

MDOC.  Id. at p. 6.  In his treatment notes, Dr. Paulson stated that the Plaintiff had a

penile deformity, and showed no objective signs of pain, and he diagnosed a pre-

existing abnormality.  See, Affidavit of Paulson, supra at p. 28.

Dr. Paulson recommended that an x-ray be taken for diagnostic purposes, but

added that, in his opinion, a referral to a urologist was unnecessary.  Id. at p. 29.  The

x-ray of the Plaintiff proved to be inconclusive, id. at p. 31, and, in June of 2005, the

Plaintiff's counsel retained Dr. Gleich, who is a urologist, to examine the Plaintiff.

Id. at p. 32.  Dr. Gleich reviewed the Plaintiff's medical record, which was supplied

by MDOC, and he examined the Plaintiff on August 5, 2005.  Id. at p. 38.  Dr. Gleich

stated that it was not possible to determine the source of the Plaintiff's abnormality,

which could be caused by Peyronie's disease, or by traumatic injury, and he

recommended that the Plaintiff be prescribed Potaba for his symptoms.  Id. at p. 39.

The Record reflects that the Plaintiff began taking Protaba, on August 30, 2005.

Id. at p. 41.  Dr. Gleich reexamined the Plaintiff on November 22, 2005, and

confirmed that he had a "Peyronie like plaque in this midshaft of the penis."  Id. at p.

42.  The Plaintiff reported that the Potaba had failed to treat his symptoms, and Dr.

Gleich discussed various future treatment options, but he did not state that they were

medically necessary.  Id.  Therefore, based on this Record, we find that the Plaintiff

has twice been examined, by a urologist of his own choosing, who practiced outside

the MDOC system, and so, to the extent that his request for a Writ of Mandamus can

be interpreted as a request for injunctive relief, it should be denied, as moot.[6]

_____

[6]The Plaintiff acknowledges that he was seen by Dr. Gleich, but he contends that, after his examination, he discovered that Dr. Gleich had treated other MDOC inmates, and therefore, had a "conflict of interest."  See, Plaintiff's Brief in Opposition, Docket No. 62, at p. 7.  However, the Record reflects that the Plaintiff's counsel contacted MDOC officials, in June of 2005, in order to arrange a consultation with a private physician, which was to be paid at his own expense, see, Affidavit of Paulson, Docket No. 42, Exhibit 1, at p. 34, and the MDOC informed the Plaintiff's

B.   <u>Burkholder's Motion for Judgment on the Pleadings</u>.

Since we have found that Counts One through Six of the Plaintiff's Amended Complaint should be dismissed, the sole remaining claim is Count Seven, which alleges that Burkholder violated Minnesota Statutes Section 595.02 by revealing information, about the Plaintiff's medical condition, at the Administrative Hearing, without the Plaintiff's permission.  Burkholder has moved to dismiss that claim, as he claims that he was not properly served with the Summons and Complaint, or alternatively, he moves for Judgment on the Pleadings.

1.   <u>Standard of Review</u>.  Rule 12(c), Federal Rules of Civil Procedure, allows parties to move for a Judgment on the pleadings, "[a]fter the pleadings are closed, but within such time as not to delay the trial."  The standard, upon which Rule 12(c) Motions are decided, is akin to that of a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure.  See, <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990)("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."), citing <u>St. Paul Ramsey County Med. Ctr. V. Pennington County</u>,

---

attorney that the Plaintiff was free to see Dr. Gleich, or any other private physician, although Dr. Gleich's office was "used to seeing [MDOC] offenders." <u>Id.</u> at p. 33. The Plaintiff chose to see Dr. Gleich, and paid for the examination with personal funds, and we find that his request for injunctive relief is, therefore, moot.

857 F.2d 1185, 1187 (8th Cir. 1988); see also, Flora v. Firepond, Inc., 260 F. Supp. 2d

780, 784 (D. Minn. 2003), aff'd, 383 F.3d 745 (8th Cir. 2004).

As a result, a "[j]udgment on the pleadings is appropriate where no material

issue of fact remains to be resolved and the movant is entitled to judgment as a matter

of law." Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2004), citing

United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th

Cir. 2000). A disputed fact is "material," if it must inevitably be resolved, and that

resolution will determine the outcome of the case. See, Anderson v. Liberty Lobby,

Inc., supra at 248; Jenkins v. Southern Farm Bureau Casualty, 307 F.3d 741, 744 (8th

Cir. 2002)("A fact is material if its determination in favor of the non-moving party

could affect the result in the case."); Herring v. Canada Life Assurance, 207 F.3d 1026

(8th Cir. 2000).

When making such determinations, "[w]e accept as true, all facts pleaded by the

non-moving party and grant all reasonable inferences from the pleadings in favor of

the non-moving party" -- here, the Plaintiff. Syverson v. Firepond, Inc., 383 F.3d 745,

749 (8th Cir. 2004), quoting United States v. Any & All Radio Station Transmission

Equip., supra at 462. However, we need not accept as true, wholly conclusory

allegations, or unwarranted factual inferences. See, Hanten v. School Dist. of

Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); Springdale Educ. Ass'n v.

Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998).  Moreover, in treating the

factual allegations of a Complaint as true, the Court "do[es] not, however, blindly

accept the legal conclusions drawn by the pleader from the facts."  Westcott v. City

of Omaha, supra at 1488, citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12

(6th Cir. 1987).

A Motion for Judgment on the pleadings can be converted to a Rule 56 Motion

for Summary Judgment, if "matters outside the pleadings are presented to and not

excluded by the court."  Rule 12(c), Federal Rules of Civil Procedure.  However, a

Court may consider some information, which is not contained within the Complaint,

such as materials that are part of the public record, and materials that are necessarily

embraced by the pleadings, without transforming the Motion into one for Summary

Judgment.  See, Porous Media Corp. v. Pall Corp., supra at 1079; see also, Faibisch

v. University of Minnesota, supra at 802; Flora v. Firepond, Inc., supra at 784-785.

Materials necessarily embraced by the pleadings include "documents whose contents

are alleged in the complaint, and whose authenticity nobody questions, but which are

not physically attached to the pleading."  Fraenkel v. Messerli & Kramer, P.A., 2004

WL 1765309 at *2 (D. Minn., July 29, 2004), quoting Kushner v. Beverly Enters., 317

F.3d 820, 831 (8th Cir. 2003), see also, <u>Jenisio v. Ozark Airlines, Inc., Ret. Plans</u>, 187 F.3d 970, 972 n.3 (8th Cir. 1999)("A district court may consider documents on a motion to dismiss where * * * the plaintiff's claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents.").

2.    <u>Legal Analysis</u>.    Minnesota Statutes Section 595.02 governs the testimony of witnesses, at a Hearing, and provides in relevant part as follows:

> A licensed physician * * * shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity.

Minnesota Statutes Section 595.02(d).

The Plaintiff alleges that Burkholder violated Section 595.02 by testifying against him, at the Administrative Hearing that was held at MCF-STW, and that resulted in a finding that the Plaintiff had lied about being sexually assaulted in order to receive treatment for a pre-existing medical condition, and he urges that civil penalties for the violation are appropriate.

On the basis of the Record presented, we have no way of knowing what Burkholder disclosed at the Administrative Hearing.   However, we find that,

irrespective of the nature of Burkholder's testimony, we lack jurisdiction to award the Plaintiff damages on this claim.   Section 595.02 is an evidentiary rule, and not a provision that creates a civil remedy for unauthorized testimony by physicians. Moreover, while the Plaintiff alleges that this disclosure caused him to suffer damages, see, <u>Plaintiff's Memorandum</u>, supra at p. 5, he fails to explain the nature of those damages.   Therefore, we recommend that Burkholder's Motion for Judgment on the Pleadings be granted, and that the Plaintiff's Amended Complaint be dismissed in its entirety.

NOW, THEREFORE, It is –

RECOMMENDED:

1.      That the State Defendants' Motion for Summary Judgment [Docket No. 39] be granted.

2.      That Burkholder's Motion to Dismiss, or in the alternative, for Judgment on the Pleadings [Docket No. 45] be granted.

3.     That the Plaintiff's Motion for Summary Judgment [Docket No. 51] be

denied.

Dated:  August 8, 2007                    s/Raymond L. Erickson

                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**August 24, 2007,** a writing which specifically identifies those portions of the Report

to which objections are made and the bases for those objections.  Failure to comply

with this procedure shall operate as a forfeiture of the objecting party's right to seek

review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of the

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than August 24, 2007,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.