## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

KENNEDY AMENYA GISEGE,                         Civil No. 06-1353 (JRT/RLE)

                              Plaintiff,

v.

                                              **ORDER ADOPTING REPORT**
MINNESOTA DEPARTMENT OF                       **AND RECOMMENDATION OF**
CORRECTIONS, JOAN FABIAN,                          **MAGISTRATE JUDGE**
NANNETTE SCHROEDER,
DR. DAYTON D. BURKHOLDER, and
JANE/JOHN DOE,

                              Defendants.

Kennedy Amenya Gisege, 185173, Minnesota Correctional Facility, 970 Pickett Street North, Bayport, MN 55003, plaintiff *pro se*.

Kelly S. Kemp and Richard L. Varco, Jr., **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendants Minnesota Department of Corrections, Joan Fabian, and Nannette Schroeder.

Jeremy J. Sundheim, **GERAGHTY O'LOUGHLIN & KENNEY, PA**, Alliance Bank Center Suite 1100, 55 East Fifth Street, St. Paul, MN 55101, for defendant Dr. Dayton D. Burkholder.

Plaintiff Kennedy Amenya Gisege, a state prisoner at the Minnesota Correctional

Facility in Stillwater, Minnesota ("MCF-STW"), brings this action under 42 U.S.C.

§ 1983, alleging violations of the First and Eighth Amendments by various employees of

the Minnesota Department of Corrections (MDOC).[1]  Plaintiff also brings claims of breach of contract, contempt of court, and seeks a writ of mandamus relating to defendants' failure to adhere to the *Hines* Decree, and alleges a violation of Minnesota's codified physician-patient privilege by defendant Dr. Burkholder.  Plaintiff is seeking actual and statutory damages.

Both plaintiff and the state defendants moved for summary judgment, and Dr. Burkholder filed a separate motion to dismiss, or, in the alternative, for judgment on the pleadings.  United States Magistrate Judge Raymond L. Erickson issued a Report and Recommendation on August 8, 2007, recommending that the state defendants' motion be granted; that Dr. Burkholder's motion be granted; and that Plaintiff's Motion be denied.  After reviewing plaintiff's objections to the Report and Recommendation *de novo*, *see* 28 U.S.C. § 636(b)(1)(C); Local Rule 72.2(b), the Court overrules those objections and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND[2]

Plaintiff alleges that defendants denied him treatment for a serious medical condition, which he describes as a "fracture of shaft of [the] penis."  Amended Complaint, at ¶9.  Plaintiff claims he was the victim of a sexual assault on April 11, 2004,

---

[1] Joan Fabian is the Commissioner of the MDOC, Nannette Schroeder is the Director of Health Services for the MDOC, and Dr. Dayton D. Burkholder is a physician who was employed by the MDOC.  Plaintiff claims that the Doe Defendant was an MDOC employee he identifies as "M. Connor," who allegedly responded to one of his kite forms.

[2] In considering whether summary judgment against the plaintiff is appropriate, we review the facts in the light most favorable to him.

while he was in the shower area of the MCF-STW facility. Plaintiff sought medical attention after the attack, and was examined by Dr. Burkholder on May 19, 2004. Plaintiff alleges Dr. Burkholder was unable to observe the plaintiff's symptoms because he failed to instruct him to induce an erection, and that Dr. Burkholder declined his request to see an urologist. Following additional examinations on September 8 and September 14 of 2004, Dr. Burkholder discussed plaintiff's symptoms with a consulting urologist.

Shortly thereafter, MCF-STW officials asked Dr. Burkholder to review plaintiff's medical records for evidence that his alleged injury was a pre-existing condition. Dr. Burkholder concluded this assessment was likely, and subsequently withdrew a request for plaintiff to be examined by an urologist. Plaintiff renewed his request for treatment by an urologist on September 26, 2004, in a prison kite form. An MCF-STW official informed him that he was not eligible for treatment because his condition was pre-existing, and a further response suggested that plaintiff had lied about the attack in order to obtain treatment. On October 7, 2007, plaintiff was charged with violating MDOC regulations by making a false treatment request, and a hearing was held on October 12. Burkholder testified against the plaintiff, and prison officials imposed a suspended sentence of forty-five days in segregation.

On December 17, 2004, plaintiff's counsel submitted a written request to Schroeder and other MDOC officials requesting a private consultative exam with an urologist. Plaintiff was examined by Dr. David Paulson, MDOC's Medical Director, on January 19, 2005. Dr. Paulson was unable to determine if the plaintiff's condition was

organic or arose as a result of an attack, but concluded that the most likely diagnosis was Peyronie's disease, a disease in which patches or strands of dense, fibrous tissue surround the cavernous body of the penis, causing deformity and pain with erections. *See American Heritage Stedman's Medical Dictionary* 562 (28th ed. 2006).  After reviewing an x-ray of plaintiff's penis, Dr. Paulson also discovered penile calcification potentially related to Peyronie's disease.

In June 2005, plaintiff's counsel arranged for an examination by Dr. Paul Gleich, a private physician and urologist.  Dr. Gleich examined plaintiff's medical records and agreed that it was not possible to determine the origins of plaintiff's deformities. Dr. Gleich prescribed a medicine commonly used to treat Peyronie's disease.  At a follow-up visit on November 22, 2005, Dr. Gleich determined plaintiff had a "Peyronie like plaque in the midshaft of the penis" that had not improved with the medication, and the two discussed further treatment options.  This lawsuit followed.

In Count One of his Amended Complaint, plaintiff alleges that the defendants violated his rights under the Eight Amendment, by deliberately disregarding his legitimate medical needs.  In Counts Two and Three, plaintiff argues that the defendants violated the terms of a consent decree issued in *Hines v. Anderson*, 439 F. Supp. 12 (D. Minn. 1977), requiring that Minnesota's primary men's maximum security prison adhere as closely to the Minnesota Patient's Bill of Rights as possible.  Plaintiff alleges that defendants' violation of the *Hines* Decree constitutes breach of contract and contempt of court.  In Count Four, plaintiff asks the Court to issue a Writ of Mandamus requiring defendants to adhere to the *Hines* Decree.  In Count Five, plaintiff alleges that

Dr. Burkholder, MDOC, and the Doe Defendant denied him medical treatment in response to his exercise of First Amendment rights.  In Count Six, plaintiff alleges that Dr. Burkholder's adverse testimony at his disciplinary hearing amounted to retaliation against plaintiff for exercising his First Amendment rights.  In Count Seven, plaintiff alleges that Dr. Burkholder violated his rights under Minn. Stat. § 595.02 by breaching the physician-patient privilege.

The Magistrate Judge recommended dismissing Counts 1, 5, and 6 because plaintiff failed to exhaust administrative remedies at the prison; dismissing Counts 2 and 3 because the *Hines* Decree does not apply to inmates at MCF-STW; dismissing Count 4 because federal courts lack jurisdiction to issue a Writ of Mandamus to state employees; and dismissing Count 7 because Minn. Stat. § 595.02 is an evidentiary rule that does not create a civil remedy for unauthorized testimony.

## ANALYSIS

Plaintiff raises several objections to the Magistrate Judge's Report and Recommendation, asserting that pursuing further administrative relief at the jail would have been futile; that the Magistrate Judge improperly dismissed his *Hines* Decree claims, that the severity of his situation justifies a Writ of Mandamus; and that Dr. Burkholder violated the physician-patient privilege.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is required when, after adequate time for discovery and upon motion, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, on which that party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating a motion for summary judgment, a court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## II.    EXHAUSTION OF REMEDIES

The Prison Litigation Reform Act of 1995 ("PLRA") requires immediate dismissal of all claims brought by inmates challenging prison conditions under federal law unless all available administrative remedies have been exhausted. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006); 42 U.S.C. § 1997e(a). The Eighth Circuit has indicated prisoners may be excused from exhausting grievance procedures "when officials have prevented prisoners from utilizing the procedures . . . or when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005). However, the Eighth Circuit has also noted that an inmate's mere subjective beliefs about the availability of procedures is not determinative, *see id.*, and the Supreme Court has recently reiterated that exhaustion is mandatory, applies to "all" available remedies rather than just those meeting federal standards, applies even where the relief sought cannot be granted in the prison administrative process, and applies to all

suits challenging prison conditions rather than just suits brought under § 1983.  *See Woodford*, 126 S. Ct. at 2382-83.

Plaintiff concedes that MCF-STW maintains formal grievance procedures and that he failed to take advantage of those procedures.[3]  Plaintiff contends, however, that doing so would have been futile.  In support of this claim, he points to MDOC's notes from his October 12, 2004, disciplinary hearing, which instructed him to "either consult an outside expert for an evaluation or to drop the issue," and indicated that he was given a suspended segregation sentence.  Kemp Affidavit, at Exhibit 4.  Plaintiff contends that his unsuccessful appeal of this decision to the warden effectively ended his prospects for relief from the jail.  The Court disagrees that this was sufficient to excuse him from exhausting the jail's grievance procedures.

Plaintiff argues that the instruction given at his disciplinary hearing indicated he would be punished for pursuing the matter further.  As the Magistrate Judge noted, however, plaintiff *did* pursue the matter further by appealing to the warden, and plaintiff does not suggest that this appeal led to any punishment.  Moreover, if plaintiff had filed a formal grievance, any retaliatory punishment would have been grounds for an actionable retaliation claim.  *See generally Lewis v. Jacks*, 486 F.3d 1025, 1028-29 (8th Cir. 2007).  Plaintiff's mere speculation that this might have happened is not enough to excuse him from the PLRA's rigorous exhaustion requirement.  *Cf. Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (en banc) (noting that the PLRA "does not permit the court to

---

[3] While plaintiff submitted an informal complaint in a kite, as indicated above, he failed to follow-up with any formal grievances pursuant to the prison's multi-step grievance procedures.

consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available'"). Accordingly, the Court adopts the Magistrate Judge's recommendation to dismiss Counts 1, 5, and 6.

## III.   *HINES* DECREE

Plaintiff next renews his breach of contract and contempt of court claims, which are based on alleged violations of the *Hines* Decree. As the Magistrate Judge indicated, however, the *Hines* Decree is not applicable to inmates at MCF-STW.

The *Hines* Decree was issued by this Court in 1977 and required that the Minnesota Patients' Bill of Rights be followed "[t]o the fullest extent possible" in "the primary maximum security prison for men in Minnesota," which at that time was located in Bayport, Minnesota. *See Hines v. Anderson (Hines I)*, 439 F. Supp. 12, 16-17, 23 (D. Minn. 1977). In 1999, the District Court noted that Minnesota's primary maximum security prison for men was now in Oak Park Heights, Minnesota, and consequently dismissed *Hines*-based claims brought by prisoners elsewhere. *See Hines v. Anderson (Hines II)*, No. 73-387 (D. Minn. Mar. 29, 1999) (ordering that the *Hines* consent decree applies only to prisoners at Oak Park Heights).[4] Like the plaintiffs in *Hines II*, plaintiff was an inmate at MCF-STW during the events that gave rise to his claims, and is unable to invoke the protections of the *Hines* Decree. Accordingly, the Court adopts the Magistrate Judge's recommendation to dismiss Counts 2 and 3.

---

[4] The Hines consent decree was recently terminated by the District Court. *See Hines v. Anderson*, No. 73-387 (D. Minn. Mar. 30, 2007) (order terminating *Hines* decree).

Plaintiff also asks that the Court issue a Writ of Mandamus requiring all of the defendants to conform to the requirements of the *Hines* Decree.  *See* 28 U.S.C. § 1361. However, a district court may grant a writ of mandamus only in extraordinary situations, and only if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy.  *Castillo v. Ridge*, 445 F.3d 1057, 1060 (8th Cir. 2006).  Officials at MCF-STW, however, have no nondiscretionary duty to adhere to the Minnesota Patients' Bill of Rights.[5]  That duty was imposed in a limited fashion for a limited time in response to widespread problems at a specific prison, and does not apply here.[6]

Plaintiff also cites to cases providing the standard for granting a preliminary injunction, presumably ordering the defendants to supply medical care consistent with the *Hines* Decree.  However, an essential element for granting a preliminary injunction is a "likelihood of success on the merits."  *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  As explained above, plaintiff has not demonstrated a likelihood of success on any of his claims against the state defendants.  Accordingly, the Court adopts the Magistrate Judge's recommendation to dismiss Count 4.

---

[5]  Moreover, this Court lacks the power to order a state official to conform his or her conduct to state law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

[6]  While plaintiff also mentions various provisions of the federal constitution in requesting a writ of mandamus, none of those provisions establish a nondiscretionary duty not adhered to in this case, nor can plaintiff establish a "clear and indisputable" right to further medical treatment.

## IV.    PHYSICIAN-PATIENT PRIVILEGE

Finally, plaintiff alleges that Dr. Burkholder violated Minn. Stat. § 595.02, Minnesota's codification of the physician-patient privilege.  As indicated above, Dr. Burkholder moved to dismiss that claim because plaintiff failed to effectively serve him with a summons and complaint, and moved in the alternative for judgment on the pleadings.

A party may move for a judgment on the pleadings any time after the pleadings have closed, Fed. R. Civ. P. 12(c), and courts analyze such motions under the same standards applied to motions brought under Rule 12(b)(6).  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  While *pro se* complaints alleging civil rights violations must be liberally construed, "[j]udgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled judgment as a matter of law." *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2004).

Regardless of what Dr. Burkholder stated in testimony, § 595.02 is a rule of evidence, and there is no indication that a private right of action is available to enforce it. Regardless, under Minn. R. Civ. P. 35.03,

> If at any stage of an action a party voluntarily places in controversy the physical, mental, or blood condition of that party, a decedent, or a person under that party's control, such party thereby waives any privilege that party may have in that action regarding the testimony of every person who has examined or may thereafter examine that party or the person under that party's control with respect to the same physical, mental, or blood condition.

Gisege clearly placed his physical condition at issue here by alleging specific injuries arising out of his altercation at the prison.  Accordingly, we adopt the Magistrate Judge's recommendation to dismiss Count 7.[7]

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket No. 91] and **ADOPTS** the Report and Recommendation dated August 8, 2007 [Docket No. 88].  Accordingly, **IT IS HEREBY ORDERED** that:

1.      State Defendants' Motion for Summary Judgment [Docket No. 39] is **GRANTED**.

2.      Defendant Dr. Burkholder's Motion to Dismiss, or in the alternative, for Judgment on the Pleadings [Docket No. 45] is **GRANTED**.

3.      Plaintiff's Motion for Summary Judgment [Docket No. 51] is **DENIED**.

## LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 28, 2007                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                              United States District Judge

---

[7] The Court also notes that plaintiff has not indicated whether he intended to sue the defendants in their official capacities only, or whether he also intended to sue them in their individual capacities.  Eight Circuit law is clear that without a clear statement of intent to sue a state official in his or her individual capacity, a complaint will be interpreted to include only official capacity claims.  *See Murphy v. Arkansas*, 127 F.3d 750, 754-55 (8th Cir. 1997).  Thus, any claims for damages in this action are barred by the Eleventh Amendment.  *See Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006).  As the preceding discussion indicates, however, plaintiff's suit fails for additional reasons that extend beyond technical pleading matters.